MARTHA C. CALLAGHAN and Another, Plaintiffs, *v.* ADELIA M. CORBIN, Defendant.

Supreme Court, New York County, February 12, 1930.

*Taylor, Blanc, Capron & Marsh* [*George S. Mittendorf* of counsel], for the plaintiffs.

*Brush & Crawford* [*J. J. Crawford* of counsel], for the defendant.

GAVEGAN, J. This is a motion to set aside a verdict for plaintiffs taken subject to the decision of the court as to the validity of the agreement in suit, defendant contending that it should be held void as a matter of public policy. Decision on the motions to dismiss was also reserved. The action is to recover $7,500, which, as the jury has found, defendant promised to pay plaintiffs if they induced a brother and sister of plaintiffs to enter into an agreement settling a will contest. Defendant is the widow of the decedent. She was the temporary administratrix of his estate and the petitioner on the application which resulted in the settlement being sanctioned by the Surrogate's Court. The will created a trust for the widow, defendant, the fund on her death to go to those then answering the description of next of kin of the decedent. His mother, who died some time after the will was admitted to probate, had filed the objections, which were withdrawn in accordance with the compromise. There also survived decedent three sisters, two of whom are the plaintiffs, a brother and that brother's children. These children had a contingent interest under the will and were represented on the compromise and settlement by a special guardian, pursuant to the statute, then section 24 of the Personal Property Law (as added by Laws of 1919, chap. 419).* The written part of the agreement on which plaintiffs seek to recover is as follows: " I, Adelia M. Corbin, honestly and sacredly pledge myself to divide $7,500 between Ora and Martha as soon as I receive the amount from the estate. Adelia M. Corbin. May 11, 1925." The promisees, " Ora and Martha," are the plaintiffs. There is also testimony that defendant's verbal agreement, evidenced by the writing, was: "I will give to you personally, not an estate matter, I personally will give you $7,500." On the settlement of the will contest, $140,000 was taken out of the trust fund, $65,000 going to defendant, $30,000 to the mother of decedent, $10,000 to each of his sisters, $10,000 to his brother, and $5,000 to the infants mentioned above. The agreement plaintiffs seek to enforce was not known to the trust company designated as executor and trustee by the will, to the special guardian or to the surrogate, and this is the reason it is

---

* Repealed by Laws of 1929, chap. 229.— [REP.

asserted that it should be declared unenforcible as a matter of public policy. Had it been eventually determined that the decedent died intestate, the infants would not have shared in his estate. But the point made for defendant is not that the infants were in any manner injured by the agreement. It is that the promise to pay plaintiffs $7,500 is void and unenforcible because a favorable report from the special guardian and the consent of the surrogate were obtained without disclosing that as a result of the settlement plaintiffs were to share $7,500 in addition to the sum of $10,000 which each was to receive pursuant to the formal settlement. Their position is that they were not to be paid for helping defendant to secure for herself any stated amount from the estate but for effectuating a conciliation with their other sister and their brother in order that the contest might be brought to an end; that one not participating in the estate would unquestionably be entitled to recover on an agreement to pay for services in aid of the laudable and entirely proper purpose of bringing outstanding interests to agreement on terms settling a will contest; that as to the $7,500 which plaintiffs seek to recover they are in no different position, their work having been performed when they had obtained the consents of their brother and sister, payment alone being postponed until defendant received her share of the moneys to be withdrawn from the estate; that the full amount so withdrawn was disclosed to the special guardian and the surrogate; that it was immaterial what defendant intended to do with her share; that plaintiffs' consent to the settlement was not obtained for the promise to pay them more than the terms of settlement indicated that they were to receive, the $7,500 being agreed compensation for obtaining the consents of others; and that there is no suggestion of improper influence of any nature.

Whatever fine distinctions may be made, I think we must concede that the agreement on which this action is based, if enforcible, has the result of giving plaintiffs a share in the moneys withdrawn from the trust fund greater than either the special guardian or the surrogate believed plaintiffs were to receive. The view can readily be taken that the $7,500 sought to be recovered would not come out of the estate; that the matter was " not an estate matter " but wholly personal to defendant. However, unless the compromise had been brought about the amount would not be due and, if it had been paid, its payment would have been one of the results of the compromise. I do not say that any fraud was perpetrated, but it seems to me that a sound public policy required that there be made to the surrogate such a disclosure of the arrangements made between parties who were to share in the

estate as would indicate fully to him what each was to receive, directly as an integral part of the compromise or indirectly from the share of another party. The statute mentioned above requires the appointment of a special guardian where infants or persons not yet in being may be affected by a settlement such as was brought about in this instance. The approval of the court is made contingent on a finding that the settlement will be just and reasonable in its effects upon the interests of infants or persons not yet in being as well as upon the interests of adults. It is further provided that the application for approval " shall set forth the provisions of any instruments or documents by virtue of which any claim is made to the property or estate and any and all facts relating to the claims of the various parties * * * and all facts which make it proper and necessary that the proposed compromise be approved by the court." Counsel for defendant refers to cases where it has been held that an agreement is void which provides for an additional payment to a creditor as an inducement for signing a composition agreement, whether the additional amount is to be paid out of the assets of the debtor or otherwise. Those cases are not directly in point. Their doctrine is based on the fundamental idea of equality between creditors Here there was no distribution on the faith of equality. It was impossible in this case to figure in advance what amounts, if any, plaintiffs might ultimately take. Moreover, the agreement which is established by the verdict was made before final agreement on figures and amounts. Defendant also relies upon another case (*Adams* v. *Outhouse*, 45 N. Y. 318, 322, 323). There certain beneficiaries of an estate concealed malfeasance on the part of the administrator in exchange for his promise to the effect that they would not lose by his misappropriation, the other beneficiaries not having the same advantage. The principle of equality was again invoked. Neither by reason of the facts nor the principles involved can that decision be regarded as having a direct bearing on the case now to be decided. But whatever may have been the prospect for these plaintiffs ultimately sharing in their brother's estate, it is a fact that the composition agreement provided for payments of $10,000 to each of them, and that thus the matter of a settlement of the will contest was, in a most practical and tangible way, made a matter of common interest. This common interest was affected by the agreement, for pursuant to it plaintiffs would receive, as a result of the compromise, $7,500 more than was disclosed by the formal settlement.

It is said that defendant having received the benefit of the agreement is not in a position to assert that it is invalid. Plain-

tiffs may naturally regard her attitude as reprehensible. As the verdict implies, she repudiated her promise after she had instituted and brought about the consummation of proceedings for her own benefit on the consents which plaintiffs used their time and energy to obtain by reason of such promise. But all that is outside the scope of my decision, for it rests, not on consideration for defendant, who broke her agreement, but on the principle that the public welfare is to be safeguarded. Even where there is no positive wrongdoing, the court should be alert to close for the future the door of temptation, as well as to show emphatic disapproval of a practice which in other cases might encourage subterfuge and deception. Where a practice may mislead a court disposing of a controversy, it is to be inhibited as a matter of public policy, regardless of whether or not injury may be or may have been done in the particular case.

The motions are granted. Settle order.